[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10284

Non-Argument Calendar

_____

CHARLES FRANKLIN HYDE,

Plaintiff-Appellant,

*versus*

BOWMAN,
Captain, Liberty County Sheriff's Office,
SHAWN FIELDS,
Drug Enforcement Agent,
UNKNOWN DRUG TASK FORCE OFFICERS,
CAPT. ASHDOWN,

Defendants-Appellees,

SAVANNAH MEMORIAL HOSPITAL,
Emergency Room Doctor, et al.,

Defendants.

————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:19-cv-00091-RSB-CLR

————————————

Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

This *pro se* appeal arises out of the district court's *sua sponte* dismissal of Charles Hyde's 42 U.S.C. § 1983 complaint against Captain Lonnie Bowman, Officer Shawn Fields, Captain Ashdown, and other unknown Southeastern District Drug Task Force Officers for allegedly using excessive force when arresting Hyde in violation of the Fourth Amendment. Hyde was injured when Bowman, after correctly determining Hyde was armed with a firearm, shot Hyde in the course of executing a search warrant for drugs on Hyde's home. The district court, screening Hyde's complaint pursuant to 28 U.S.C. § 1915A(b),[1] determined that,

---

[1] As relevant here, § 1915A provides that the district court "shall review . . . a complaint in a civil action in which a prisoner seeks redress from a

23-10284                Opinion of the Court                3

even taking as true all the allegations in the light most favorable to Hyde, he failed to state a claim on which relief could be granted because his allegations did not establish that Bowman's conduct was objectively unreasonable. Hyde argues that the district court erred in dismissing his complaint because Bowman acted unreasonably and maliciously in shooting him. After careful review, we affirm.

## I.        Background

In April 2019, Hyde, proceeding *pro se*, sued Bowman, Fields, Savannah Memorial Hospital, and the Southeastern Drug Task Force alleging various violations of his civil rights.[2] After multiple rounds of screening by the district court, and Hyde's criminal conviction,[3] the district court struck Hyde's Amended Complaint as a sanction under Federal Rule of Civil Procedure 11 because many of his allegations were inconsistent with his criminal

---

governmental officer or employee of a government entity" and "dismiss the complaint . . . if the complaint . . . fails to state a claim upon which relief may be granted." 28 U.S.C. 1915A(a)–(b).

[2] The hospital and the Southeastern Drug Task Force were dismissed from this case, and any claims against them are not before us on appeal.

[3] Hyde was convicted on federal drug and firearm charges and sentenced to 444 months' imprisonment. We recently affirmed his conviction and sentence. *United States v. Hyde*, No. 22-10332, 2024 WL 726909 (11th Cir. Feb. 22, 2024) (unpublished).

trial testimony and ordered Hyde to file a "renewed Amended Complaint."[4]

Hyde filed the operative Second Amended Complaint ("SAC") which alleged the following. At night, on May 3, 2018, the Liberty County Sheriff's Office raided Hyde's home to search for drugs. They did not announce their presence before entering the home, and Hyde was awakened by "dogs barkin[g] and glass breaking." After waking up, Hyde entered the dark hallway armed with a gun where a flash bang went off and stunned him. After entering the home, the officers shouted "Sheriff's Department," and afterward there was "total silence." The officers were in Hyde's living room, and he was in the hallway leaning against the doorframe, stunned from the flash bang, when he was shot in the hand after he pulled the trigger on his gun to make a clacking sound. After being shot, Hyde fled to his bedroom, screaming at the officers "why did you shoot me?" The officers asked Hyde "where is the gun" to which he responded, "it's on the floor here in the bedroom." The officers instructed Hyde to place his hands outside the door and to lay on the floor. Hyde complied and an officer put a knee on his neck and a boot on his face. He was arrested, stripped naked, and taken outside.

Hyde alleged that Officer Bowman "admit[ted] to shooting Hyde" and also admitted "to hearing" Hyde squeeze the trigger, although he did not see Hyde pull the trigger. Hyde alleged that

---

[4] The district court's sanctions order striking Hyde's Amended Complaint is not before us on appeal.

the clacking sound his gun made when he pulled the trigger showed that it was inoperable, and he speculated that Bowman knew what the sound meant. Accordingly, he alleged that the use of force against him was "completely needless" because he had demonstrated to the officers that the gun he held when they entered his home did not shoot, and he never threatened the officers. He argued in his pleading that Officer Bowman could have talked to him before shooting, and that if the officers believed he had tried to shoot anyone, that he would have been charged with attempted murder. He also argued that Bowman could have taken other measures if he thought that Hyde was trying to shoot him, including "talk[ing] to Hyde" to de-escalate the situation. Hyde alleged that "Bowman tried to be a hero" by "shoot[ing] [Hyde's] gun out of [his] hand" instead of taking de-escalating measures. He also took issue with how various pieces of evidence were handled and alleged that the officers fabricated evidence to cover for Bowman.

Based on the above allegations, Hyde sent a follow-up document, which essentially continued his complaint, demanding a jury trial under § 1983 and bringing claims for "excessive force in violation of the 4th Amendment" and "cruel [and] unusual punishment in violation of the Eighth Amendment."

The magistrate judge issued a report and recommendation (hereinafter "report"), recommending that the district court *sua sponte* dismiss the complaint pursuant to 28 U.S.C. § 1915A for failing to state a claim. The magistrate judge determined that the

majority of Hyde's complaint was allegations related to an excessive force claim under the Fourth Amendment against Bowman and that, even taking Hyde's allegations as true, his allegations failed to show that Bowman acted objectively unreasonably under the circumstances. Thus, the magistrate judge determined that Bowman had not used excessive force and recommended that the excessive force claim be dismissed.[5] The magistrate judge's report informed Hyde that he would have fourteen days to file objections to the report and that "failure to timely file objections [would] result in the waiver of rights on appeal."

Hyde objected to the dismissal of the excessive force claim. Specifically, he argued that the magistrate judge failed to construe the allegations in the light most favorable to him and, when construed in the correct light, his allegations showed that Bowman's conduct was objectively unreasonable. He emphasized that (1) Bowman was never in danger and that Hyde never attempted to escape; (2) it was objectively unreasonable for Bowman to shoot him and argued that the court held Hyde to a higher standard than Bowman; (3) officers, including Bowman, had provided false testimony against him at his criminal trial; and (4)

---

[5] The magistrate judge also recommended that to the extent Hyde alleged (1) a claim for excessive force based on the manner of his arrest; (2) a claim for cruel and unusual punishment for his strip search; and (3) conclusory claims regarding evidence tampering, those claims be dismissed as well.

Bowman had "snuck up and shot [him without] warning, never giving him a chance to not be shot."

The district court overruled those objections. In doing so, it adopted the magistrate judge's report and determined that, based on the allegations in Hyde's amended complaint, Bowman's use of deadly force was objectively reasonable in light of the circumstances, namely the fact that Hyde had a gun while in the hallway during the officers' raid of Hyde's home and Hyde pulled the gun's trigger causing it to make a clacking sound. Accordingly, the district court dismissed Hyde's complaint because his "allegations were insufficient to state an excessive force claim." Hyde timely appealed.

## II.          Legal Standard

"We review *de novo* a district court's *sua sponte* dismissal for failure to state a claim for relief under 28 U.S.C. § 1915A(b)." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017). The same standards that apply to a dismissal under Federal Rule of Civil Procedure 12(b)(6) apply to dismissals under § 1915A. *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001).

## III.          Discussion

On appeal, Hyde argues that he "state[d] enough facts to relief that is plausible on its face" and that the district court failed to construe the allegations, and draw all reasonable inferences, in the light most favorable to him. He contends that "discovery will show the proof" of his claim and that the district court improperly weighed the facts and made credibility determinations in

concluding that the allegations did not show that Bowman's conduct was objectively unreasonable.[6]    Hyde also argues in passing that the district court erred in dismissing his other claims, particularly, the claims related to the alleged improper strip search and the alleged fabrication of evidence.[7]

To state a claim, a complaint must contain facts that, if accepted as true, state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Fed. R. Civ. P. 8(a).    All factual allegations—as opposed to legal conclusions—must be taken as true, but the allegations must be more than speculation. *Iqbal*, 556 U.S. at 678–79 (explaining that plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and

---

[6] This portion of Hyde's brief includes additional factual allegations that were not in his operative complaint, including allegations that Bowman saw Hyde surrendering, with his back turned, and his gun pointing at the floor.    This recitation of the facts is drastically different than Hyde's operative complaint wherein he alleged that Bowman heard Hyde, but did not see him, squeeze the trigger on his gun to make a "clacking sound."    In any event, our *de novo* review of a district court's dismissal for failure to state a claim requires us to accept the allegations *in the complaint* as true and construe them in the light most favorable to the plaintiff.    *Bilal v. Geo Care, LLC*, 981 F.3d 903, 909 (11th Cir. 2020).    Accordingly, we do not consider these new factual allegations in our analysis.

[7] Hyde did not object to the magistrate judge's dismissal of these claims. Because he did not object to the magistrate judge's report regarding his other claims, he has waived the right to challenge on appeal the dismissal of these claims.    11th Cir. R. 3-1 (providing that if a party fails to object to the magistrate judge's findings or recommendations after being provided notice of the opportunity to object and the consequences of not doing so, he waives the right to challenge those matters on appeal).

requires more than mere speculative conclusions); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Pro se* pleadings are liberally construed. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

"[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). Further, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quotation omitted).

Excessive force claims that arise from events incident to an arrest are judged under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989). "That standard requires us to ask 'whether the officer's conduct was objectively reasonable in light of the facts confronting the officer.'" *Patel v. City of Madison*, 959 F.3d 1330, 1338–39 (11th Cir. 2020) (alteration adopted) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)). Accordingly, we must "examine the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'" *Baker v. City of Madison*, 67 F.4th 1268, 1279 (alteration adopted) (quoting

*Graham*, 490 U.S. at 396)).   Factors to be considered include whether the officer (1) has probable cause to believe that the target may harm the officer or others; (2) reasonably believes the use of deadly force is needed to prevent escape; and (3) has—if feasible— given a warning before using deadly force.  *Bradley v. Benton*, 10 F.4th 1232, 1240–41 (11th Cir. 2021).  Thus, to allege a plausible excessive force claim, Hyde's complaint must include allegations that, when taken as true, plausibly allege that Bowman's conduct was objectively unreasonable.  If Hyde's allegations do not do so, then the allegations are insufficient to state a claim for excessive force.  *See Jones*, 549 U.S. at 215.

Although the mere presence of a gun does not itself justify the use of deadly force, when a gun "is available for ready use" officers are not required to wait until an armed suspect uses his weapon before applying such force.  *Powell v. Snook*, 25 F.4th 912, 922 (11th Cir.), *cert denied*, 143 S. Ct. 110 (2022).  An officer is not required to warn an armed suspect before opening fire, especially if the time taken to warn could result in the officer's death.  *Id.*  The officer's actions are not to be viewed with the benefit of 20/20 hindsight, and the court's determination of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving[.]"  *Kisela v. Hughes*, 548 U.S. 100, 103 (2018)).

Here, even liberally construing the factual allegations in Hyde's operative complaint in the light most favorable to him,

Hyde failed to plausibly allege that Bowman's actions were objectively unreasonable. Hyde's operative complaint describes a "tense, uncertain, and rapidly evolving" situation. *Id.* He alleged that (1) the officers were raiding his house at night; (2) Hyde entered the dark hallway carrying his gun; (3) he squeezed the trigger on his gun to cause it to make a "clacking" sound; (4) Bowman heard the gun clack and knew that it was a gun; and (5) Bowman shot him. Although Hyde alleged that he made the gun clack to show that it was not operable and speculates that Bowman knew the clacking sound meant it was inoperable, the district court was not required to credit this speculative allegation as to what Bowman believed the sound meant. *Twombly*, 550 U.S. at 555; *Jackson*, 372 F.3d at 1262 (explaining that conclusory allegations and speculative deductions of fact are not admitted as true for purposes of the failure to state a claim analysis). Based on Hyde's allegations concerning the facts known to Bowman at the time—namely that he heard Hyde squeeze his gun's trigger to make it clack—it was reasonable for Bowman to believe that Hyde was armed and dangerous, meaning the use of deadly force was objectively reasonable. *See Bradley*, 10 F.4th a 1240–41.

Although Hyde makes much of the fact that Bowman shot him without a warning, under the circumstances, the failure to provide a warning was not plausibly objectively unreasonable given that, according to Hyde, Bowman knew Hyde was armed and had heard Hyde make a "clacking" sound with the gun by pulling the trigger. *Powell*, 25 F.4th at 921–22. Accordingly, the district court properly concluded that Hyde's complaint failed to

adequately allege that Bowman used excessive force, and we affirm the district court's dismissal.

**AFFIRMED**.